IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| HENRY F. DAVIS, ) | CASE NO. 1:10-cv-1142 |
| ) | |
| Plaintiff, ) | JUDGE POLSTER |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Henry F. Davis ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and this case be REMANDED for further proceedings consistent with this report and recommendation.

## I. PROCEDURAL HISTORY

On June 13, 2005, Plaintiff filed applications for DIB and SSI and alleged a disability onset date of August 4, 2004. (Tr. 14.) The applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 14.) On June 13, 2008, an ALJ held Plaintiff's hearing. (Tr. 14.) Plaintiff appeared at the hearing, was represented by counsel, and testified. (Tr. 14.) A vocational expert ("VE") also testified at the hearing. (Tr. 14.)

On June 26, 2008, the ALJ found Plaintiff not disabled. (Tr. 21.) On May 7, 2010, the Appeals Council declined to review the ALJ's decision so the ALJ's decision became the Commissioner's final decision. (Tr. 5.) Plaintiff thereafter timely filed this cause of action in this Court. (Doc. No. 1.)

Plaintiff's arguments amount to one general assignment of error: the ALJ's RFC determination is not supported by substantial evidence.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was sixty years old at the time of his hearing before the ALJ and when the ALJ rendered his decision. (Tr. 19.) He has a limited education and is able to communicate in English. (Tr. 19.) He has past relevant work as a tow motor driver and order filler. (Tr. 189.)

### B. Medical Evidence

On March 2, 2004, Plaintiff presented to the University Hospitals Emergency Department with a complaint of abdominal pain and remained at the hospital for a week

2

to undergo testing and treatment.  (Tr. 110-123.)  Dr. Patrick Whelan, M.D., attended to Plaintiff and indicated that Plaintiff reported the following.  Plaintiff had a history of hypertension, alcohol abuse, pancreatitis, hepatitis B, hepatitis C, and gallstones.  (Tr. 111.)  He also had a history of smoking and using illicit drugs, and he smoked a pack of cigarettes a day.  (Tr. 112.)  He had been drinking a pint of wine a day for the past three days.  (Tr. 111.)  Dr. Whelan diagnosed Plaintiff with acute pancreatitis.  (Tr. 113.)  Dr. Imran Tahir, M.D., participated in Plaintiff's care and indicated that Plaintiff rested comfortably after being given medication.  (Tr. 123.)

The record contains no other medical records until more than one year later.  On May 29, 2005, Plaintiff again presented to the University Hospitals Emergency Department with a complaint of abdominal pain that radiated to his back.  (Tr. 124-25.)  Dr. Mahi Ashwath, M.D., attended to Plaintiff and reported much the same as Dr. Whelan the year before.  (*See* Tr. 125.)  Dr. Ashwath indicated that Plaintiff reported the following.  Plaintiff's abdominal pain began the night before, after he had been drinking.  (Tr. 125.)  Plaintiff had a history of diabetes, and his alcohol abuse was complicated by Mallory-Weiss tear[1] that occurred some time in the past.  (Tr. 125.)  He had been experiencing swelling in his lower extremities over the past two months, and the swelling became worse over the last few days.  (Tr. 125.)  He became short of breath when he did yard work, but he was able to walk half a mile daily.  (Tr. 125.)  Dr. Ashwath diagnosed Plaintiff with acute, chronic pancreatitis; gave Plaintiff medication;

---

[1] A Mallory-Weiss tear is a laceration at or near the junction between the esophagus and stomach that is typically caused by many hours or days of severe vomiting or retching.  *See* Dorland's Illustrated Medical Dictionary 1824 (30th ed. 2003).

3

and discharged Plaintiff four days later.  (Tr. 126.)

On July 27, 2005, state agency reviewing physician Dr. Gary Hinzman, M.D., reviewed Plaintiff's medical records and opined that Plaintiff was capable of lifting or carrying 50 pounds occasionally; lifting 25 pounds frequently; and sitting, standing, or walking about six out of eight hours a day.  (Tr. 136.)  Dr. Hinzman further found that Plaintiff had no limitations in his ability to push or pull (except to the extent that Plaintiff was limited in lifting and carrying); and that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  (Tr. 136-39.)  Dr. Hinzman explained that he took Plaintiff's complaints of pain into account in his RFC assessment.  (Tr. 136.)

On November 18, 2005, state agency reviewing physician Dr. Jerry McCloud, M.D., reviewed and affirmed Dr. Hinzman's assessment.  (Tr. 142.)

On September 23, 2005, Plaintiff underwent a psychological evaluation with Dr. Joseph Konieczny, Ph.D.  (Tr. 143-48.)  Plaintiff reported that his daily activities included watching TV, going for walks, cooking, doing laundry and other household chores, shopping, and occasionally socializing with friends.  (Tr. 145.)  Dr. Konieczny diagnosed Plaintiff with alcohol dependence and assessed Plaintiff as follows.  Plaintiff could adequately concentrate, attend to tasks, and understand and follow directions; but Plaintiff was mildly limited in his abilities to withstand stress and pressure, relate to others, and deal with the general public.  (Tr. 147.)  Dr. Konieczny assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 50, which reflected the effects of

Plaintiff's alcohol abuse.[2]  (Tr. 147.)

On November 16, 2005, state agency reviewing psychologist Dr. Kristen Haskins, Psy.D., performed a psychiatric review of Plaintiff.  (Tr. 149.)  Dr. Haskins determined that Plaintiff suffered alcohol dependence and assessed Plaintiff as follows. Plaintiff was mildly limited in his abilities to perform activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace.  (Tr. 151.) Plaintiff had no episodes of decompensation.  (Tr. 151.)

On May 9, 2006, Plaintiff presented to the University Hospitals Emergency Department with a complaints of nausea, vomiting, and abdominal pain.  (Tr. 155.)  Dr. Whelan attended to Plaintiff and reported, among other things, the following.  Plaintiff's "baseline is to be . . . polyuric."[3]  (Tr. 155.)  During Plaintiff's stay and treatment at the hospital, Plaintiff's pain was brought under control and his condition was stabilized.  (Tr. 156.)  Dr. Whelan told Plaintiff to take Maalox for indigestion and warned Plaintiff that his pain would keep recurring if he persisted in drinking alcohol.  (Tr. 157.)  Plaintiff "swore off drinking, saying that he would never drink again."  (Tr. 156.)

---

[2] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning.  A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

[3] Polyuria is "the passage of a large volume of urine in a given period, as in diabetes mellitus."  Dorland's Illustrated Medical Dictionary, *supra* note 1, at 1486.

5

**C.     Hearing Testimony**

**1.     Plaintiff's Hearing Testimony**

Plaintiff testified at his hearing as follows.  Plaintiff lives with his niece.  (Tr. 188.) Plaintiff last worked as a tow motor operator and order filler approximately four years prior, but was fired because he presented to work intoxicated.  (Tr. 189.)  He did not pursue another job because he believed his former employer would tell prospective employers the basis for his termination and, therefore, any prospective employers would not hire him.  ( Tr. 190.)  He believes that he was still capable of working at that time, but is not able to work now because he has "a lot of aches and pains."  (Tr. 190.) Plaintiff has pain in his lower back and in the thighs of both of his legs.  (Tr. 191.)  His lower back hurts after doing work in his niece's yard (Tr. 191), and when he lifts over 50 pounds (Tr. 192).  Rainy weather also makes his back hurt.  (Tr. 200.)  His back does not hurt when he does not have to bend over.  (Tr. 192.)  Plaintiff is able to stand for "a couple of hours" before his back hurts (Tr. 192), and he has to sit or lie down for about an hour before the pain goes away (Tr. 193).

Plaintiff's legs hurt when he squats down.  (Tr. 192.)  Walking up and down stairs makes his legs throb; for example, when he carries his niece's laundry up the stairs. (Tr. 193.)  His legs hurt two or three times a week.  (Tr. 194.)  Generally, however, walking does not cause his legs to hurt, and he is able to walk for approximately a mile. (Tr. 194.)  It takes him approximately ten minutes to walk to the store that is located around the corner from his home.  (Tr. 198.)

Plaintiff drinks alcohol often; he does not go without drinking for more than a day.

(Tr. 197.)  He does not take prescription medications for his back and leg pain, but sometimes he takes Ibuprofen.  (Tr. 193, 194.)  Plaintiff also takes a variety of medications for his other conditions, including his diabetes.  (Tr. 195.)  Plaintiff did not suffer any side effects from his medications.  (Tr. 195.)

Plaintiff spends his days helping his niece clean the house and do yard work such as mowing the lawn or pulling weeds.  (Tr. 198.)  Plaintiff does not have a driver's license (Tr. 198), so he takes public transportation whenever he needs to travel (Tr. 199).  He rides the bus approximately twice a month.  (Tr. 199.)

Plaintiff has to use the restroom approximately ten times a day, and three or four times within an hour.  (Tr. 202.)

### 2. Vocational Expert's Hearing Testimony

The ALJ posed a hypothetical person to the vocational expert as follows:

> I want you to assume that we have an individual the same age, education and work experience as Mr. Davis who has the following limitations:  He is able to lift and/or carry, push and pull, 50 pounds occasionally and 25 pounds frequently, is able to stand and/or walk for six hours of an eight-hour day, sit for about six hours, [and] is occasionally able to climb, balance, stoop, kneel, crouch and crawl.

(Tr. 204.)  The VE testified that such a person would be able to perform Plaintiff's past relevant work as a tow motor operator as that work is generally performed in the national economy.  (Tr. 204.)  The VE then testified that such a person could perform other unskilled, medium work that exists in the national economy:  hand packager (for which there are 2,000 jobs in northeast Ohio, 9,400 jobs in Ohio, and 207,000 jobs nationally); industrial cleaner (for which there are 20,000 jobs in northeast Ohio, 102,000 jobs in Ohio, and 2,200,000 jobs nationally); and kitchen helper (for which

there are 500 jobs in northeast Ohio, 2,500 jobs in Ohio, and 48,000 jobs nationally). (Tr. 205.)

The ALJ added an extra limitation to his hypothetical person: the person is able to understand, remember, and carry out only simple instructions. (Tr. 205.) The VE testified that such a person would still be able to perform Plaintiff's past relevant work and the other jobs to which the VE testified existed in the national economy. (Tr. 205-06.)

Plaintiff's attorney asked the VE whether such a hypothetical person with the ability to stand for six out of eight hours in a day, but for only two hours at a time, would be able to perform any of the work to which the VE testified. (Tr. 206.) The VE testified that such a person could still perform such work. (Tr. 206.) Plaintiff's attorney then asked whether such a person who also needed to sit for an hour after standing for two hours could do such work. (Tr. 206.) The VE testified that such a person would not be able to perform any work on a full-time basis. (Tr. 206.)

Finally, Plaintiff's attorney returned to the ALJ's original hypothetical and added the limitation of requiring restroom breaks approximately two to three times an hour. (Tr. 206-07.) The VE testified that such a person "would need a special accommodation . . . [f]or any job." (Tr. 207.)

The VE indicated that she would bring to the ALJ's attention any conflicts between her testimony and the Dictionary of Occupational Titles (Tr. 203); and the VE did not mention any conflicts in her testimony (*see* Tr. 203-07).

8

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and

9

416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since August 4, 2004, the alleged onset date.

3. The claimant has the following severe impairments: cirrhosis, alcohol dependence, diabetes mellitus.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work . . . . Claimant can lift, carry, push or pull 25 pounds frequently and up to 50 pounds maximum occasionally. He can stand, walk or sit for 6 hours in an 8 hour day. The claimant can only occasionally balance, stoop, kneel, crouch, crawl or climb. He can understand, remember or carry out simple instructions.

6. The claimant is unable to perform his past relevant work, because of [sic] he is limited to understanding, remembering, and carrying out only simple instructions.

. . . . .

9. Although the claimant has performed semi-skilled work, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 4, 2004 through the date of this decision.

(Tr. 16-20.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281

11

(6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.    The ALJ's Assessment of Plaintiff's RFC

Plaintiff argues that the ALJ erred by failing to incorporate into his RFC determination Plaintiff's subjective statements of being able to stand for only two hours and requiring frequent restroom breaks. The Court agrees for the reason that the ALJ did not sufficiently address matters that could have affected his RFC determination.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's decision must contain specific reasons for his finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight he gave to the individual's statements and the reasons for that weight. S.S.R. 96-7p, 1996 WL 374186, at *1.

Plaintiff testified that he could not stand for more than two hours before he

12

needed to sit or lie down. The ALJ did not state whether or why he rejected this subjective statement. This was harmful error because the VE testified that a person with Plaintiff's characteristics who was not able to stand for more than two hours before he needed to sit or lie down would not be able to perform work on a full-time basis, and the Court is not able to determine whether the ALJ's decision is supported by substantial evidence without an explanation of what weight the ALJ gave Plaintiff's statement that he could stand for only two hours and why he gave it that weight.

Furthermore, Plaintiff argues that the ALJ erroneously rejected Plaintiff's subjective statement that he required restroom breaks two or three times an hour. The Court agrees that the ALJ did not provide a sufficient explanation for rejecting this allegation. The ALJ explained that, although Plaintiff claimed "he frequently needs to urinate," that claim was not supported by a medically determinable impairment or the objective medical evidence. (Tr. 19.) The ALJ's rationale is not fully supported. The ALJ found that Plaintiff suffered diabetes mellitus as a severe impairment. (Tr. 16.) On May 9, 2006, Dr. Whelan reported that Plaintiff was polyuric. (Tr. 155.) Polyuria has been defined as "the passage of a large volume of urine in a given period, *as in diabetes mellitus*." Dorland's Illustrated Medical Dictionary, 1486 (30th ed. 2003) (emphasis added). It appears that Plaintiff has a medically determinable impairment that could cause his alleged need to use the restroom frequently—diabetes mellitus—that should have been specifically addressed by the ALJ. The ALJ's failure to consider Plaintiff's alleged need to use the restroom frequently in light of Plaintiff's diabetes mellitus condition was harmful error because the VE testified that a person with Plaintiff's characteristics who required restroom breaks two or three times an hour

13

would need a special accommodation for any job (Tr. 207), and the Court is not able to determine whether the ALJ's decision is supported by substantial evidence without an explanation of the functional limitations imposed by Plaintiff's diabetes mellitus on Plaintiff's ability to work.

In sum, remand is necessary for the ALJ to: (1) explain the weight given to Plaintiff's subjective statement of his ability to stand for only two hours at a time and, if given any weight, how that limitation affects Plaintiff's RFC and ability to perform other work; and (2) address Plaintiff's diabetes mellitus condition and its consistency with Plaintiff's subjective statement of a need to use the restroom frequently and, if given any weight, how such a limitation affects Plaintiff's RFC and ability to perform other work.

Finally, Plaintiff argues that the ALJ improperly relied on Plaintiff's daily activities to conclude that Plaintiff could perform medium work, as Plaintiff believes that his daily activities do not support the conclusion that he is able to perform medium, or any work. The Court finds that Plaintiff's argument lacks merit. An ALJ may consider a claimants daily activities when determining the claimant's RFC. *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). However, an ALJ must consider the record as a whole in his RFC assessment. *See* 20 C.F.R. § 416.945(a); S.S.R. 96-8p, 1996 WL 374184, at *5. Here, the ALJ stated that he considered the record evidence when he assessed Plaintiff's RFC, including not only Plaintiff's daily activities, but also the opinions of state agency consultative examiners and Plaintiff's subjective statements of his limitations. (Tr. 19.) Even if Plaintiff's daily activities could be interpreted to support an RFC lower than medium work, those daily activities alone

would not be dispositive of Plaintiff's RFC. Because Plaintiff has not explained how Plaintiff's daily activities do not support the ALJ's RFC determination based on the record as a whole, this assignment of error lacks merit.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be REVERSED and this case be REMANDED for further proceedings consistent with this report and recommendation.

                                             s/ *Nancy A. Vecchiarelli*
                                             U.S. Magistrate Judge

Date: July 28, 2011

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of this notice. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn*, **474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986)**.